```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

JAMES MITCHELL and TERRELL   :
JACKSON,                     :
     Plaintiff,              :
                             :
v.                           :      3:21cv307 (AWT)
                             :
WARDEN WALKER, et al.,       :
     Defendants.             :
```

### Initial Review Order

The plaintiff, James Mitchell, a sentenced inmate[1] in the custody of Connecticut Department of Correction ("DOC"), filed this action pursuant to 42 U.S.C. § 1983. He filed his original complaint on March 9, 2021, asserting claims of Eighth and Fourteenth Amendment violations against Cheshire Correctional Institution ("Cheshire"), Warden Walker and Corrections Officers Walker and Martin arising from his confinement in prison during the COVID-19 pandemic. Compl. (Doc.#1). After his motion to proceed in forma pauperis was granted on March 18, 2021, Mitchell filed an amended complaint with another inmate, Terrell Jackson, named as a co-plaintiff. Am. Compl. (Doc.#9). This amended complaint has the same allegations that Mitchell made in his original complaint and seeks damages and declaratory and injunctive relief. The amended complaint's allegations only

---

[1] The court may "take judicial notice of relevant matters of public record." Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012). Mitchell was sentenced on October 12, 2005.
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=253732.

refer to one individual, "the plaintiff." As the allegations are the same as Mitchell's original complaint, the court construes the allegations asserted to refer only to plaintiff Mitchell.

The court will permit only Mitchell's Eighth Amendment claims to proceed.

## I. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of

2

America, 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

**II.  FACTUAL ALLEGATIONS**

The complaint alleges the following facts.

On November 25, 2020, two officers knowingly exposed Mitchell to COVID-19. Doc. #1 at ¶ 1. Warden Walker went to specific cells to inform the inmates that they would be transferred to different units due to positive COVID-19 tests. Id. at ¶ 2.  Inmates who tested positive and those who were exposed to positive inmates were transferred to isolation units. Id. at ¶ 3.

Correction Officer Martin let out eight of the ten inmates who were being moved to isolation.  Id. at ¶ 4.  Officers Warren and Martin knowingly allowed the COVID-19 positive inmates to wander around the facility, use the telephones, and socialize with other inmates.  Id. at ¶ 5.  Thereafter, Officers Warren and Martin let out another group of inmates, including two who had tested positive for COVID-19.  Id. at ¶ 6.  They permitted these defendants to wander around the facility, use the telephones, and socialize with other inmates.  Id. at ¶ 7. Officers Warren and Martin did not transfer the first eight Covid-19 inmates when they permitted the second group of COVID-19 positive inmates to walk about the facility.  Id. at ¶ 8.

3

Mitchell was an inmate who was responsible for cleaning and disinfecting the unit.  Id. at ¶ 9.  On November 20, 2020, twenty-two inmates tested positive and were exposed to COVID-19, including Mitchell.  Id. at ¶ 10.  Mitchell was placed in isolation for fourteen days.  Id. at ¶ 12.

Thereafter, on November 24, 2020, every inmate in the South Block received a COVID-19 test.  Id. at p. 11. Although the Rapid Tests provided results in minutes, Warden Walker did not order the South Block to be locked down or quarantined.  Id. The inmates who tested positive for the virus were not moved until the next day, November 25, 2020.  Id.  The inmates who tested positive were able to socialize with other inmates who had tested negative.  Id.

**III. DISCUSSION**

The amended complaint asserts claims of Fourteenth and Eighth Amendment violations based on the defendants' deliberate indifference to exposing the plaintiff to a substantial risk of harm to his health and safety.  As Mitchell is a sentenced inmate, his claims are reviewed under Eighth Amendment rather than the Fourteenth Amendment standard.[2]

---

[2] The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendments.  Claims of pretrial detainees involving deliberate indifference to medical needs or unsafe conditions of confinement are considered under the Due Process Clause of the Fourteenth Amendment, but

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).[3] "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft, 556 U.S. at 676. In Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), the Second Circuit concluded that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Id. at 618 (quoting Iqbal, 556 U.S. at 676). "The violation must be established against the supervisory official directly." Id.

---

such claims brought by a sentenced prisoner are considered under the cruel and unusual punishment clause of the Eighth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29-34 n.9 (2d Cir. 2017); Lloyd v. City of New York, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017). Thus, Mitchell's Fourteenth Amendment claim must be dismissed as not plausible.

[3] The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).

**A.    Plaintiff Jackson**

Rule 21 of the Federal Rules of Civil Procedure states: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 214 F.R.D. 152, 154 (S.D.N.Y. 2003). In considering severing a party or claim, a district court should consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." Id. at 154-55. A trial court may sever parties or claims in its discretion to promote judicial economy. In re Methyl Tertiary Butyl Ether Prod. Liab. Litig., 247 F.R.D. 420, 424 (S.D.N.Y. 2007). There is nothing in the body of the original or amended complaints that suggests that the interests of justice or judicial economy permit Jackson to proceed as a plaintiff in this action. Also, Jackson has not submitted an application to proceed in forma pauperis or paid the filing fee. To permit him to proceed in this action without doing so would enable him to circumvent these requirements. Accordingly, the court will sever Jackson from this action under Federal Rule of Civil Procedure 21. He may file a separate

6

action to assert his Eighth Amendment claim.  If he files a separate action, he must either pay the filing fee or submit a motion to proceed in forma pauperis.

**B.   Eighth Amendment**

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. See U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm to a sentenced prisoner. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "The Eighth Amendment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates,'" and "[t]hat extends to 'protect[ing] prisoners from violence at the hands of other prisoners.'" Morgan v. Dzurenda, 956 F.3d 84, 89 (2d Cir. 2020) (quoting Farmer, 511 U.S. at 832, 833).

> The "deliberate indifference standard embodies both an objective and a subjective prong." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). "First, the alleged deprivation must be, in objective terms, sufficiently serious." Id. (internal quotation marks and citation omitted). "Second, the charged official must act with a sufficiently culpable state of mind." Id. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." Id. "[A] prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

7

      inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (internal quotation marks and citation omitted).

Morgan, 956 F.3d at 89; Collazo v. Pagano, 656 F.3d 131, 135 (2d Cir. 2011) (per curiam )("the requisite state of mind" is "the 'equivalent of criminal recklessness'").

    As an initial matter, Mitchell has not alleged facts to show that he is an individual who is at high risk if he contracts the COVID-19 virus.  Nor has he alleged that he has any condition that renders him particularly vulnerable to the virus.  However, as Mitchell has alleged that he was exposed to and contracted the virus, the court will assume for initial pleading purposes that he has alleged a sufficiently serious risk to his health and safety.

    Mitchell's complaint sufficiently alleges that Warren, Martin and Walker (who were involved with the isolation and quarantining of inmates due to COVID-19) knew of the serious risk of harm due to the COVID-19 virus but failed to failed to take measures to protect Mitchell from contracting COVID-19. See Tangreti, 983 F.3d at 616 ("[F]or deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an

8

inmate and disregarded it."). Accordingly, the court will permit Mitchell's Eighth Amendment claim for damages to proceed against Warren, Martin and Walker beyond initial review.

Mitchell requests a declaratory judgment and a preliminary and permanent injunction requiring the defendants to be retrained about exposing prisoners to the COVID-19 virus.

As an initial matter, any claims for money damages against the defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. See, e.g. Kentucky v. Graham, 473 U.S. 159, 169 (1985).

A plaintiff may proceed against a DOC official in his or her official capacity to the extent he alleges an ongoing constitutional violation. See Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254-55 (2011) (citing Ex parte Young, 209 U.S. 123 (1908)). In Ex parte Young, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. Id. at 155-56; In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of

federal law." In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007). However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 146 (1993).

Mitchell's request for a declaratory judgment stating that defendants have violated his constitutional rights in the past must be dismissed as barred by the Eleventh Amendment. See Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young . . . to claims for retrospective relief.").

Mitchell's request for injunctive orders must be dismissed as moot because is no longer housed at Cheshire (the docket reflects that he is housed at MacDougall-Walker Correctional Institution). See Shepard v. Goord, 662 F.3d 603, 610 (2d Cir. 2011) ("an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). Moreover, Mitchell's claim does not satisfy the capable of repetition, yet evading review doctrine, which represents an exception to the general rule of mootness. See Murphy v. Hunt, 455 U.S. 478, 482–83 (1982). This doctrine is limited to cases where the challenged action is of a duration too short to be fully litigated prior to cessation or expiration; and there is a "'reasonable expectation' or a

'demonstrated probability' that the same controversy will recur involving the same complaining party." Id. (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).  A general possibility that Mitchell could be rearrested, convicted and subject to the same deliberate indifference by the same defendants is insufficient to satisfy the exception to mootness; it is too speculative. See Preiser v. Newkirk, 422 U.S. 395, 403 (1975); Allah v. Annucci, No. 16-CV-1841 (KMK), 2018 WL 4571679, at *10 (S.D.N.Y. Sept. 24, 2018) (collecting cases finding that inmates' claims of possible future transfer or return to institution is too speculative to satisfy capable of repetition doctrine).  Accordingly, the requests for preliminary and permanent injunctions are not plausible.

**ORDERS**

For the foregoing reasons, the court enters the following orders:

(1) Mitchell's Eighth Amendment claims may proceed against Warren, Martin and Walker.  Mitchell's Fourteenth Amendment claims are DISMISSED as not plausible.  Mitchell's Eighth Amendment official capacity claims are DISMISSED as moot.  Plaintiff Jackson is severed and dismissed from this action under Federal Rule of Civil Procedure 21 without prejudice to his filing a separate action.  Jackson is informed that he must

11

file either a motion to proceed in forma pauperis or the filing fee to proceed with a separate action.

(2) The Clerk shall verify the current work address for Correctional Officer Warren, Correctional Officer Martin, and Warden Walker with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and this Initial Review Order to them at their confirmed address within **twenty-one (21) days** of this order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.  If a defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk shall send a courtesy copy of the complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the

allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26 to 37, shall be completed within **six months (180 days)** from the date of this order.  Discovery requests need not be filed with the court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.  That standing order can also be found at

http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11)  If Mitchell changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a

13

new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify the defendants or defense counsel of his new address.

(12) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on the defendants' counsel by regular mail.

It is so ordered.

Signed at Hartford, Connecticut, this 9th day of July, 2021.

                                               _____/s/AWT_____
                                                      Alvin W. Thompson
                                        United States District Judge